IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. SUSAN L. DALE,<br>an individual,<br>               Plaintiff,<br>vs.<br><br>1. MAIN EVENT ENTERTAINMENT<br>LP d/b/a/ MAIN EVENT<br>ENTERTAINMENT a foreign<br>limited partnership,<br>               Defendant. | Case No. 17-CV-677-TCK-JFJ<br><br>JURY TRIAL DEMANDED<br><br>ATTORNEY LIEN CLAIMED FOR<br>THE FIRM |

## COMPLAINT

**COMES NOW,** the Plaintiff, Susan Dale ("Plaintiff"), through her attorney of record Charles C. Vaught of the firm *Armstrong & Vaught, P.L.C.* and hereby submits the following *Complaint* against the Defendant, Main Event Entertainment LP (hereinafter "Defendant"). In support thereof, Plaintiff would respectfully show as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1367(a). In particular, jurisdiction is premised on violations of Title VII of the Civil Rights Act and the ADAAA.

2. Declaratory and equitable relief are sought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, and compensatory and punitive damages are sought pursuant to 42 U.S.C. § 2000e, *et seq.*

3. Costs and attorneys' fees may be awarded pursuant to Rule 54 of the Federal Rules of Civil Procedure and the above statutes.

4. This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the Northern District of Oklahoma, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391(b), because the unlawful employment practices alleged herein arose in this judicial district.

1

5. Plaintiff is, and was at all times relevant hereto, a resident of the State of Oklahoma, residing in Tulsa, Tulsa County, Oklahoma.

6. The acts and/or omissions giving rise to this lawsuit occurred in Tulsa County, State of Oklahoma.

7. In conformance with Title VII statutory prerequisites, Plaintiff submitted pre-charge information to the United States Equal Employment Opportunity Commission ("EEOC") less than 300 days after the events described herein occurred. Subsequently, Plaintiff submitted a Charge of Discrimination, prepared by the EEOC, to the EEOC. The EEOC completed its investigation and issued a Notice of Right to Sue on September 18, 2017 (attached as Exhibit A hereto and hereby incorporated by reference as though fully set forth herein), which was received by Plaintiff via regular mail on September 19, 2017. Plaintiff has timely filed her *Complaint* within 90 days of her receipt of the Notice of Right to Sue from the EEOC.

8. Defendant is an employer as defined by Title VII and the ADAAA, in that it was a public entity engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

## OPERATIVE FACTS

9. Plaintiff was hired by Defendant in March of 2015 as a Trainer and Lead Banquet Attendee.

10. During January of 2016, Plaintiff suffered a work place injury to her knees, shoulders, and neck.

11. Plaintiff was placed on a ten-pound weight restriction by her physicians following her work place injury. Plaintiff's physicians also required that Plaintiff use a cart to help move food and beverages to and from tables and prohibited any overhead reaching. To date, these restrictions have remained in place and remain permanent in nature.

12. Plaintiff's disabilities impair her ability to perform the following tasks: walking, lifting, working, and moving her body in certain ways.

13. On April 20, 2016, Plaintiff informed Defendant of her need for an accommodation by delivering her doctor's notes to Andrew LNU, Bar Manager. Later that same day, Bruce Johnsen, General Manager, acknowledged receipt of those restrictions and Plaintiff's need for accommodation.

14. Throughout her employment, Plaintiff was subject to discrimination based on her disabilities. Additionally, Defendant failed to accommodate Plaintiff's disability. Non-exclusive examples of the disability discrimination are, as follows:

   a. Reda LNU, Kitchen Trainer, would make comments to Plaintiff's co-workers about Plaintiff "faking" her disability.

   b. Reda would take the cart that had be set aside exclusively for Plaintiff's use to use for other purposes, in violation of Plaintiff's accommodation.

   c. Mike LNU, Kitchen Manager, would move the supplies necessary for the banquets out of Plaintiff's reach, which violated Plaintiff's restrictions and the accommodations that she had been previously granted.

   d. As an accommodation to her disabilities, kitchen staff and servers had been instructed to assist Plaintiff in obtaining items to complete her server duties. However, as time went on, Defendant's employees refused to provide that assistance and Defendant's management would not enforce the accommodation.

   e. Defendant removed desirable events, such as the Ultimate Banquet, from Plaintiff's duties due to her disabilities.

3

  f. After initially refusing to accommodate Plaintiff's disabilities, Defendant granted the following accommodations:

    i. Use of cart to complete Plaintiff's assigned job duties;

    ii. Assistance with overhead reaching;

    iii. Assistance with heavy lifting.

  g. These accommodations were taken away by Wayne LNU, Vice President of Operations, on September 16, 2016.

15. Subsequently Defendant's Human Resources Department instructed the Vice President of Operations to permit the accommodations. However, Defendant repeatedly threatened to remove the accommodations throughout the remainder of Plaintiff's employment.

16. Throughout her employment, Plaintiff was subjected to or witnessed sexual harassment. Non-exclusive examples of the sexual harassment are, as follows:

  a. On March 17, 2016, Plaintiff was on the patio with Kaitlyn Tiger, Team Service, and guests of the establishment when Bob approached Plaintiff and slapped her on the butt. Bob proceeded to tell other employees to check out Plaintiff's butt because "you most likely will see my hand print. I hit her hard!"

  b. On multiple occasions, Bob asked Plaintiff whether she had gotten "laid" in a while.

  c. On multiple occasions, Bob asked Plaintiff if "people her age had sex."

  d. Plaintiff was smiling and Bob stated, "so you got some last night?"

  e. Plaintiff asked Bob for cherry garnishes for a customer's drink. Bob handed her the cherries and stated, "I bet it has been a while since you've seen this," suggesting that Plaintiff had lost her hymen a long time ago.

4

    f. Bob would wipe whip cream across Plaintiff's crotch area.

    g. Johnathan Daughtry and Colton Bedingfield were speaking about how they enjoy masturbation in front of Plaintiff and others.

    h. Mr. Bedingfield approached Plaintiff while she was bending over to retrieve something from the hostess stand and said, "penis, penis, penis."

    i. Mr. Bedingfield saw a customer that looked like Elvis Presley and then turned to Plaintiff and said, "Look, Elvis with a big dick."

    j. Mr. Bedingfield asked Plaintiff if her daughter's boyfriend was a "good fuck."

17. Throughout her employment, Plaintiff witnessed sexual harassment of her female co-workers that created a hostile or offensive work environment for Plaintiff. Non-exclusive examples of the sexual harassment are, as follows:

    a. On March 5, 2016, Plaintiff witnessed Bob grab Reda's breast and make comments regarding the size and feel of her breasts.

    b. Plaintiff overheard Bob ask Tara LNU, Team Service, if she "liked it in the butt."

    c. Plaintiff witnessed Mr. Bedingfied tell Brandi Johnson, Team Service that her messy hair looked like "sex hair."

    d. Sexually explicit music was played in the kitchen.

    e. Mr. Daughtry called Ashley Shannon, Server, a slut over the intercom.

    f. Mr. Daughtry engaged in conversations with Ms. Shannon and her boyfriend, Kyle Bougio, Kitchen Staff, about the sexual positions they should use while Ms. Shannon was pregnant.

18. Plaintiff initially reported the sexual harassment to John LNU, Chef, who took steps to stop the behavior. As Plaintiff's employment progressed, the sexual harassment continued and she was also subjected to disability discrimination. Plaintiff continued to report these issues to her immediate supervisors and the General Manager, Bruce Johnson. When those reports proved ineffective, and Plaintiff was slapped on the butt by Bob LNU, Bartender, Plaintiff wrote a statement and delivered it to Chef John, who then gave the letter to Bruce Johnson.

19. By February 7, 2017, the sexual harassment and disability discrimination was continuing. Plaintiff then emailed Timna Hamilton, Human Resource Department, and reported the sexual harassment and disability discrimination. Even after reporting the behavior to Corporate Human Resources, the sexual harassment and disability discrimination continued.

20. Subsequent to Plaintiff's reports of the sexual harassment and disability discrimination, she was subjected to adverse employment actions in retaliation for those reports. Non-exclusive examples of the adverse employment actions are, as follows:

    a. Following the server meeting of February 12, 2017, Plaintiff was assigned fewer and smaller banquets than she had previously been assigned, which caused a significant drop in Plaintiff's pay.

    b. Plaintiff was not allowed to use the cart to move her food and beverages to and from the table, despite her restrictions and the previous accommodations.

    c. Plaintiff was subjected to abusive comments from her supervisors and co-workers.

    d. In violation of Defendant's policies, General Manager Bruce Johnson provided specific details of Plaintiff's allegations to the employee she was complaining of.

21. As a condition of resolution of Plaintiff's Workers' Compensation claim, Defendant required Plaintiff to resign her employment. This forced resignation was in retaliation for Plaintiff's continued reports of sexual harassment and disability discrimination.

22. Plaintiff was subjected to unwelcome sexual harassment during her employment with Defendant, in violation of Title VII of the Civil Rights Act.

23. Plaintiff was discriminated against due to her disability in violation of the Americans with Disabilities Act.

24. Plaintiff was retaliated against for her numerous complaints of disparate treatment, in violation of Title VII of the Civil Rights Act of 1964.

25. Plaintiff's employment with Defendant was terminated in retaliation for reporting the sexual harassment she was subjected to as an employee, in violation of Title VII of the Civil Rights Act.

26. As a result of the sexual harassment, disability discrimination and the retaliation, Plaintiff has suffered, and continues to suffer, lost wages and benefits as well as headaches, anxiety and emotional distress.

## FIRST CLAIM
## (SEXUAL HARASSMENT IN VIOLATION OF TITLE VII)

27. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

28. By and through, but not limited to, the events described herein, Plaintiff's terms and conditions of employment were adversely affected, and a hostile work environment was created, due to the on-going sexual harassment directed toward Plaintiff and witnessed by Plaintiff.

29. By and through, but not limited to, the actions described above, Defendant has violated Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. §§ 2000e, *et seq*.

30. As a direct and proximate cause of said actions by Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer lost wages, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation and other pecuniary losses.

31. Defendant's actions were willful and done with reckless indifference to Plaintiff's rights, thus warranting an award of punitive damages in Plaintiff's favor.

32. Plaintiff has been injured by the sexual harassment she was subjected to and is entitled to compensatory and punitive damages and any other damages permitted under Title VII of the Civil Rights Act of 1964 and 1991, as amended.

## SECOND CLAIM FOR RELIEF
## (RETALIATION IN VIOLATION OF TITLE VII)

33. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

34. Plaintiff followed the proper procedures as an employee of Defendant in exercising her federally protected right to report sexual harassment she, and co-workers, were being subjected to as an employee in Defendant's employ.

35. Plaintiff reported the discrimination she was subjected to as an employee to a proper agent to receive such complaints.

36. As a direct result of Plaintiff's complaint, Defendant altered the terms, conditions and/or privileges of Plaintiff's employment by, among other retaliatory acts, terminating Plaintiff's employment.

37. As a direct result of Plaintiff's complaint, Defendant retaliated against Plaintiff for exercising her federally protected right to report the sexual harassment she was subjected to in the workplace.

### THIRD CLAIM FOR RELIEF
### (NEGLIGENT SUPERVISION)

38. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

39. Defendant knew or should have known that Defendant's agents and/or employees had a propensity for sexually harassing employees, as demonstrated by the observations of its management and/or supervisory employees, other employee's prior reports of that behavior, and Plaintiff's prior reports of same.

40. That, at the time Defendant's agents and/or employees were sexually harassing Plaintiff, or otherwise creating a hostile work environment, Defendant had reason to believe that its employees would create an undue risk of harm to others.

41. That Defendant failed to act upon this belief.

42. That Plaintiff was injured because of Defendant's failure to act.

43. That Plaintiff's injuries are a direct and proximate result of Defendant's failure to act.

### FOURTH CLAIM
### (DISCRIMINATION IN VIOLATION OF THE ADA)

44. Plaintiff incorporates and re-alleges the above paragraphs as though fully set forth herein and would further state, as follows:

45. As a result of her work place injury, Plaintiff was disabled pursuant to the ADAAA.

46. In the alternative, Defendant perceived Plaintiff as disabled or the Plaintiff had record of such impairment.

47. Plaintiff was qualified to perform, with reasonable accommodations, the essential functions of her position with Defendant.

48. Defendant violated the ADAAA by failing to make reasonable accommodations for Plaintiff's known physical limitations.

49. Defendant violated the ADAAA by permitting its agents and/or employees to create a hostile work environment regarding Plaintiff's disability.

50. Defendant further violated the ADAAA by terminating Plaintiff's employment because of her disability.

51. By and through, but not limited to, the events described herein, Plaintiff's terms and conditions of employment were adversely affected by Defendant's refusal to make reasonable accommodations for Plaintiff's known physical limitations, the hostile work environment Defendant's agents and/or employees created regarding Plaintiff's disability, and/or the termination of Plaintiff's employment because of her disability.

52. By and through, but not limited to, the actions described herein, Defendant has violated the ADAAA, *42 U.S.C.§§ 12101, et seq.*

53. Defendant's actions were willful and recklessly indifferent to Plaintiff's rights, thus warranting punitive damages.

54. As a direct and proximate result of Defendant's actions, Plaintiff has, is now, and will continue to suffer lost wages, fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

55. Plaintiff has been injured by this discrimination, and is entitled to compensatory and punitive damages and any other damages available pursuant to the ADA.

## FIFTH CLAIM
## (RETALIATION IN VIOLATION OF THE ADA)

56. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state, as follows:

57. Plaintiff followed the proper procedures as an employee of Defendant in exercising her federally protected right to complain of the failure to accommodate and disparate treatment he was subjected to as an employee in Defendant's employ.

58. Plaintiff reported the failure to accommodate and discrimination she was subjected to as an employee of Defendant to those in supervising authority.

59. As a direct result of Plaintiff's complaint, Defendant altered the terms, conditions and/or privileges of her employment by, among other retaliatory acts, demoting his job status.

60. As a direct result of Plaintiff's complaint, Defendant retaliated against Plaintiff for exercising her federally protected right to report the disparate treatment she was subjected to in the workplace.

61. Defendant retaliated against Plaintiff in violation of 42 U.S.C. § 12203.

**WHEREFORE**, premises considered, Plaintiff prays for a declaration that the conduct engaged by the Defendant was in violation of Plaintiff's rights; for an award to Plaintiff for the equitable relief of lost wages, an award of compensatory damages to compensate Plaintiff for the emotional distress, mental anguish and humiliation she has suffered, and an award of punitive damages to punish Defendant for its violations of federal and state law, all in excess of One Hundred Thousand Dollars ($100,000.00); award Plaintiff her costs and expenses, including a reasonable attorney's fee, as provided for by applicable law; award an assessment of damages to compensate for any tax consequences of this judgment; and for any such further legal or equitable relief this honorable Court deems just and proper.

Respectfully submitted,

**ARMSTRONG & VAUGHT, P.L.C.**

By: ___s/ Charles C. Vaught___
**Charles C. Vaught, OBA #19962**
2727 East 21st Street, Suite 505
Tulsa, OK 74114
(918) 582-2500 – *telephone*
(918) 583-1755 – *facsimile*
***Attorney for Plaintiff***

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Susan L. Oaks<br>4109 E. 49th St<br>Tulsa, OK 74135 | From: | Oklahoma City Area Office<br>215 Dean A. McGee Avenue<br>Suite 524<br>Oklahoma City, OK 73102 |

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 564-2017-00562 | Rafael Tirado,<br>Investigator | (405) 231-5867 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

_____    9-18-17
For, Holly Waldron Cole,            (Date Mailed)
     Area Office Director

Enclosure(s)

cc: Celeste Yeager
Shareholder
Littler Mendelson, P.C.
c/o Littler Mendelson, GSC
2301 McGee St., 8th Floor
Kansas City, MO 64108



EXHIBIT A